**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                            :
**WILLIAM BURDETTE,**       :
                            :     **Civ. No. 16-142 (RMB)**
        **Petitioner,**     :
                            :
     v.                     :     OPINION
                            :
**WARDEN J. HOLLINGSWORTH,** :
                            :
        **Respondent.**     :
_____ :

**BUMB,** United States District Judge

Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Pet., ECF No. 1), seeking relief from expulsion from the Residential Drug Abuse Program ("RDAP") at FCI Fort Dix, and transfer to another facility. (Pet. at 15.) Respondent filed a Response, opposing habeas relief. (Government's Response to Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Gov't Resp.", ECF No. 5.) Petitioner filed a Reply. (Petr's Reply, ECF No. 6.)

I.  BACKGROUND

Petitioner was sentenced on June 20, 2008, in the United States District Court for the District of Maryland, to a prison term of 135-months with supervised release for life, upon conviction for transportation of child pornography in interstate

and foreign commerce by means of computer, in violation of 18 U.S.C. § 2256. United States v. Burdette, No. 07 Cr. 318 (D. Md.) (Docket No. 27). Petitioner is presently confined in FCI Ft. Dix. (Pet., ECF No. 1 at 2.) Assuming the maximum possible good-conduct time, his projected release date is May 16, 2018. (Declaration of Tara Moran ("Moran Decl.)", ECF No. 5-2, Ex. 1.)

On June 11, 2014, Petitioner signed a document entitled "Agreement to Participate in a Bureau of Prisons Residential Drug Abuse Treatment Program." (Declaration of Joshua Houseman "Houseman Decl."), ECF No. 5-1, ¶3; Ex. 2.) By agreeing to participate in RDAP, Petitioner was expected to fully participate in treatment activities, refrain from disruptive behavior, and follow all BOP policies, rules, and regulations. (Id.) If he withdrew or was expelled from RDAP, the Agreement contained a warning that he would lose all incentives, including any potential early release. (Id.) Petitioner also signed the RDAP "Code of Conduct," which warned that Petitioner could be expelled for unacceptable behavior. (Id., ¶4; Ex. 3.)

Prior to beginning the program, on March 23, 2015, Petitioner signed the "Residential Drug Abuse Program Phase Expectations," which notified him that he was required to demonstrate specific behavioral changes to successfully complete RDAP. (Id., ¶4; Ex. 4.) He commenced RDAP on April 3, 2015. (Id., ¶5; Ex. 1.)

2

On July 15, 2015, Petitioner met with the RDAP clinical team to discuss his lack of progress in treatment. (Houseman Decl., ¶6; Ex. 5.) The team emphasized his "isolation, responsibility, entitlement, justification, mollification, communication deficits, poor/aggressive body language, struggle with being receptive, and social rule breaking." (Id.) Petitioner was confronted by staff and peers for these behaviors. (Id.) He tended not to interact with a majority of the community, limiting himself to a few peers all of whom had similar behaviors, criminal tendencies, and beliefs. (Id.) The following actions were taken: (1) he was given a wristband to signify he was struggling with the program; (2) he was given a formal warning; and (3) additional activities were added to his treatment plan. (Id.)

On July 24, 2015, Petitioner led a discussion in his group, asking for feedback on his negative behaviors. (Id., ¶7; Ex. 6.) The group gave Petitioner examples of his behavior, including isolation, entitlement, and poor investment in treatment. (Id.) His reaction was to rebut or challenge his peers. (Id.) This information was relayed to the rest of the BOP drug treatment staff. (Id.)

The clinical staff again met with Petitioner on July 30, 2015. (Id. ¶8; Ex. 7, 8.) They noted that Petitioner had not demonstrated progress and had not met expectations in any area

3

of treatment. (Id.) Therefore, the clinical team determined that RDAP was not appropriate for Petitioner, and they encouraged him to seek nonresidential substance abuse treatment, as well as sex offender treatment. (Houseman Decl., Ex. 7.)

Petitioner was expelled from RDAP on July 30, 2015. (Id.) The drug abuse program coordinator explained:

> The inmate has failed to show progress in his treatment despite being given feedback on his behaviors. He was given a formal formal [sic] warning with additional treatment activities to address his manipulation, and continued to display the same behaviors after completing the activities. He has received unfavorable 60-day reviews and continues to show limited or no behavioral application.
>
> He takes no responsibility for his actions. At this time Mr. Burdette is expelled form [sic] RDAP. He is encouraged to seek out Non-residential drug abuse treatment services while on the compound. He can re-apply for RDAP after 90 days if he wishes.

(Id., Ex. 8.)

On August 18, 2015, Petitioner submitted a Form BP-8 "Informal Resolution Form." (Moran Decl. ¶5; Ex. 2.) In the BP-8, Petitioner asked for readmission to RDAP "at an accommodating institution where all activities are on one level. I am a chronic care inmate, medically prohibited from climbing and reliant on a
wheelchair/walker to travel any distance. The limitations were contributing and aggravating factors in my expulsion." (Moran

Decl.; Ex. 2.)

A BOP counselor responded on September 20, 2015, stating that Petitioner was expelled because of his poor performance, not his medical issues. (Moran Decl., Ex. 2.) The counselor also noted that Petitioner could re-apply to the program after 90 days, and that the program took place on the first floor, so Petitioner's limitations were not an impediment. (Id.)

Petitioner submitted an appeal to the warden on Form BP-9. (Moran Decl., ¶6; Ex. 3.) The appeal was rejected as untimely, because BOP regulations provide that a Form BP-9 must be submitted within 20 days of the event complained of. (Id.) Petitioner appealed to the Regional Director, and then the BOP General Counsel's office. (Moran Decl., ¶7; Ex. 4 & 5.) Both appeals were rejected, but not denied, based on untimeliness. (Id.)

II. DISCUSSION

A. RDAP

The BOP is charged with making available "appropriate substance abuse treatment for each prisoner the [BOP] determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(e). Subject to the availability of appropriations, the BOP must provide residential substance abuse treatment for all "eligible" prisoners. 18 U.S.C. § 3621(e)(1)(C). As an incentive for successful completion of the

5

program, the BOP may, in its discretion, reduce the sentence of a prisoner convicted of a nonviolent offense by up to one year. 18 U.S.C. § 3621(e)(2)(B).

The BOP has promulgated regulations to implement the statutory requirements.  28 C.F.R. § 550.53 (effective March 16, 2009) provides that the inmate must have a "verifiable substance use disorder," 28 C.F.R. § 550.53(b)(1), and that the "Drug Abuse Program Coordinator decides whether to place inmates in RDAP."  28 C.F.R. § 550.53(e). BOP Program Statement 5330.11 governs application of RDAP placement.

BOP Program Statement 5330.11 § 2.5.12(d)(1)[1] provides, "[i]nmates may be removed from the program by the Drug Abuse Program Coordinator because of disruptive behavior related to the
program or unsatisfactory progress in treatment." Inmates ordinarily will be given one "formal warning" before expulsion. Id. § 2.5.12(d)(2).  BOP staff will often provide an inmate with at least one treatment intervention prior to removal.  Id.

    B.    Exhaustion of Administrative Remedies

"Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241."   Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) (citing Bradshaw v.

---

[1] Available at www.BOP.gov.

Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981) (per curiam). Exhaustion is not required where the petitioner establishes that it is futile or where the goals of exhaustion would not be met. Cerverizzo v. Yost, 380 F. App'x 115, 116 (3d Cir. 2010) (per curiam). "[A] procedural default generally bars review of a federal habeas corpus petition absent a showing of cause and prejudice." See Moscato, 98 F.3d at 761. "Cause" is something external that impeded efforts to comply with the procedural rule. Coleman v. Thompson, 501 U.S. 722, 753 (1991).

The BOP Administrative Remedy Program is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. For the first step, an inmate must attempt to informally resolve the dispute with staff. 28 C.F.R. § 542.13. If this fails, the inmate may file an administrative remedy request, Form BP-9, with the warden of the institution, within twenty calendar days of the date of the event giving rise to the complaint. 28 C.F.R. § 542.14.

If the warden denies the administrative remedy request, the inmate may file an appeal with the BOP regional director, on Form BP-10, within twenty calendar days of the date of the warden's response. 28 C.F.R. § 542.15. If the regional director denies the appeal, the inmate may appeal to the general counsel of the Federal Bureau of Prisons, on Form BP-11, within

thirty calendar days from the date of the regional director's response. 28 C.F.R. § 542.15 "Appeal to the General Counsel (Central Office) is the final administrative appeal." Navarro v. Shartle, Civ. Action No. 13-7613(RMB), 2014 WL 47937, at *1 (D.N.J. Jan. 7, 2014.)

Respondent asserts that Petitioner did not properly exhaust because his BP-9 form was not timely. (Gov't Resp., ECF NO. 5 at 17.) He filed a BP-8 on August 17, 2015, challenging his expulsion from RDAP on July 30, 2015. (Moran Decl., Ex. 2.) The BOP responded on September 20, 2015. (Id.) Petitioner did not file a BP-9 with the warden until October 14, 2015. (Moran Decl., Ex. 3.) Even if the time to respond to the BP-8 is excluded, the BP-9 was still untimely. (Gov't Resp., ECF No. 5 at 17.)

In the petition, Petitioner asserted that BOP staff routinely refuse to issue a BP-9 without proof that a BP-8 was previously filed, which requires waiting for a response with no time limit. (Pet, ECF No. 1 at 7.) Petitioner contends he gave his completed BP-9 form to Counselor Holterman on October 6, 2015, only sixteen days after the BP-8 was denied. (Petr's Reply, ECF No. 6 at 4-5.)

Petitioner cannot access the staff offices on the second floor, so another inmate placed Petitioner's BP-9 under the staff wing entrance door on the morning of October 6. (Id. at

8

4.) Petitioner states that any delay in his BP-9 form reaching the warden's office is attributable to BOP staff, not Petitioner. (Id.) The BP-10 and BP-11 forms were also dismissed as untimely, based on rejection of the BP-9. (Id. at 5.)

The record shows that Petitioner attempted to timely file his BP-9 form[2] on October 6, 2015, but he was unable to deliver it himself because he is in a wheelchair and did not have access to the staff offices on the second floor. The BOP did not acknowledge receipt of the BP-9 until October 14, 2015. The untimeliness of Petitioner's BP-9 caused rejection of each of his subsequent requests for an administrative remedy. Thus, Petitioner has shown cause and prejudice, his necessary reliance on another person to personally deliver his BP-9 to staff on the second floor, excusing his failure to properly exhaust his remedies. The Court will address Petitioner's claims.

    C.    <u>Standard of Judicial Review of Expulsion from RDAP</u>

Respondent asserts that the BOP's individualized determination to expel an inmate from RDAP is not subject to judicial review. (Answer, ECF No. 5 at 13.) If the Court chooses to review the RDAP determination, Respondent contends the decision may only be set aside if it is arbitrary or

---

[2] Petitioner signed and dated the BP-9 form on October 5, 2015. (Pet., Ex. E, ECF No. 1-2 at 13.)

9

capricious. (Id. at 23.) Additionally, Respondent maintains that prison inmates do not have a protected liberty interest in RDAP participation or in receiving a sentence reduction for completing RDAP; therefore, there is no constitutional Due Process claim. (Id. at 20-21.)

The Court agrees that there is no Due Process liberty interest in RDAP participation or a sentence reduction upon RDAP completion. See Douvos v. Quintana, 382 F. App'x 119, 122 (3d Cir. 2009) (finding no protected interest under § 3621(e)); Washington v. Zickefoose, Civ. No. 12-303(RBK), 2012 WL 5247623, at *3 (D.N.J. Oct. 24, 2012) (RBK) (collecting cases); Meachum v. Fano, 427 U.S. 215, 226-28 (1976) (a statute which grants the prison administration discretion does not confer a right on an inmate). Therefore, Petitioner does not have a constitutional challenge to his RDAP expulsion.

18 U.S.C. § 3625, "Inapplicability of the Administrative Procedures Act," provides that "the provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." Although some courts[3] have held there is

---

[3] Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011) ("[t]here is no ambiguity in the meaning of 18 U.S.C. § 3625," . . . "any substantive decision by the BOP to admit a particular prisoner into RDAP, or to grant or deny a sentence reduction for completion of the program, is not reviewable by the district court"); Standifer v. Ledezma, 653 F.3d 1276, 1279 n.3 (10th

no judicial review of RDAP determinations under 18 U.S.C. § 3621(e), the Third Circuit has not yet decided the issue. See Thorndike v. Hollingsworth, Civ. No. 15-2014(NLH), 2016 WL 4705443 at *5-6 (D.N.J. Sept. 8, 2016) (collecting cases).

18 U.S.C. 3625 appears to preclude judicial review of a BOP determination under § 3621 to expel a prisoner from an RDAP program. However, because the issue is unsettled in the Third Circuit, the Court will assume it has jurisdiction to review the decision under the arbitrary and capricious standard set forth in the APA at 5 U.S.C. § 706(2). See Anderson v. Schultz, Civ. Action No. 09-4683 (RMB), 2010 WL 5017352, at *4 (D.N.J. Nov. 23, 2010) ( reviewing individual RDAP determinations using the arbitrary, capricious or abuse of discretion standard); Fuentes v. Samuels, Civ. No. 07-2336 (RBK), 2008 WL 442211, at *7 (D.N.J. Feb. 14, 2008) (same).

D.  Petitioner's Claims

Petitioner contends his failure in the RDAP program was due to his inability to access the upper floors, including the staff alley, game rooms, exercise rooms and inmate dorm rooms.

---

Cir. 2011) ("To the extent Standifer challenges only the BOP's decision regarding his eligibility for RDAP participation, his argument is expressly foreclosed by 18 U.S.C. § 3625, which prohibits judicial review under the APA of RDAP placement decisions."); United States v. Hughes, Crim. No. 06-377-9, 2012 WL 3627466, at *2 n.3 (E.D. Pa. Aug. 23, 2012) ("We lack jurisdiction to review the BOP's individualized determinations as to RDAP placement and eligibility.")

(Petr's Reply, ECF No. 6 at 9-10.)  Furthermore, in his Reply, Petitioner argued that RDAP staff had resolved to expel him long before they actually did so, motivated by bias because Petitioner was convicted of transportation of child pornography. (Id. at 13, 15-16.)

In April 2015, a cellmate reported Petitioner to staff for discussing child pornography. (Id. at 11.) Staff responded with a locker search, but nothing was found. (Id.) Petitioner explained he was only discussing the harshness of sentencing for transportation of child pornography. (Id.) Petitioner notes that by the end of August, all six of the inmates whose lockers were searched for pornography had withdrawn or been expelled from RDAP. (Id. at 12.)

According to Petitioner, there were 38 participants in his program, which began on April 6, 2015. (ECF No. 6-1 at 12.) Petitioner does not state how many of those 38 participants dropped out or were expelled by August 2016. This Court finds that the record does not support Petitioner's belief that he was expelled from RDAP based the pornography investigation and search.

First, in none of Petitioner's administrative remedy requests does he complain that he was expelled based on the pornography allegation and locker search. (Petr's Reply, ECF No. 6-1 at 8-10.) Second, Petitioner did not raise this issue

in his petition, but only in his reply brief. (ECF No. 1.) Courts need not address arguments raised for the first time in a reply brief. See Marte v. U.S., Civ. Action No. 1307259(SDW), 2015 WL 3629540, at *7 n.4 (collecting cases).

Third, three months after starting the treatment program, Petitioner received a warning. (ECF No. 5-1 at 17.) At that point, he had already been confronted by staff members and peers alike for his poor response to treatment in the following areas: isolation, responsibility, entitlement, justification, mollification, communication deficits, poor/aggressive body language, unreceptive and social rule breaking. (ECF No. 5-1 at 17.) About ten days later, Petitioner received feedback from his peers, and they provided "examples of how he tends to manipulate, how he isolates himself from the community, how he is not receptive to any feedback, entitlement, and his poor investment in treatment." (Id. at 19.) When Plaintiff was expelled from the program at the end of July, he "had not met the phase expectations in any area of treatment." (Id. at 21.) This evidence strongly supports the conclusion that Petitioner was expelled based on his poor performance in treatment.

Petitioner also claims his progress in treatment was hampered by his lack of access to the upper floors of the building. However, the record shows that all of his treatment

and group sessions occurred on the first floor, and all television rooms, computer stations, and laundry facilities are located on the first floor, providing opportunities for peer interactions. (Houseman Decl., ¶9.) Additionally, other inmates with physical limitations have completed RDAP at FCI Fort Dix. (Id.) Petitioner may not have had an unlimited opportunity to interact with other RDAP participants, but the access he was provided was sufficient to allow the interactions required in the program, if he chose to do so.

The record shows that Petitioner did not engage with others to the extent required to be successful in treatment. On July 15, 2015, the clinical team noted his tendency to isolate and limit his interactions to a few peers with similar beliefs and tendencies. (Houseman Decl., Ex. 5.) He had been confronted by peers and staff about his poor response to treatment on several occasions without showing improvement. (Id.)

On July 24, 2015, his peers provided feedback about his negative behaviors including isolation, manipulation and unreceptiveness. (Id., Ex. 6.) Despite a warning, he did not make progress and was expelled one week later, when he was described as "highly treatment resistant in all areas of treatment." (Id., Ex. 7.) Therefore, the record supports a rational basis for Dr. Houseman's decision to expel Petitioner

from RDAP for failure to progress in treatment due to his attitudes and behaviors. See 28 C.F.R. § 550.53(g)(1) (the Drug Abuse Program Coordinator may remove inmates from the program due to "unsatisfactory progress in treatment.")

Petitioner also asks the Court to order Respondent to transfer him to another RDAP program.[4] "[T]he Bureau has nearly exclusive jurisdiction to classify and transfer prisoners." Beckley v. Miner, 125 F. App'x. 385, 389 (3d Cir. 2005). Relief is available only when the BOP's denial of a transfer is frivolous or irrational. Id. Petitioner states only that "The BOP has repeatedly refused to evaluate Petitioner's transfer request on the basis of the content." (Petr's Reply, ECF NO. 6 at 17.)

The record shows that on July 30, 2015, Petitioner was advised that he could reapply for an RDAP program after ninety days. (Houseman Decl., Ex. 8.) He did not wait 90 days, he asked for a transfer in his BP-8 request on August 19, 2015.

---

[4] Petitioner cites the Americans with Disabilities Act, in support of his request to transfer to a different RDAP program with better wheelchair access. (Pet., ECF NO. 1 at 11-12.) Petitioner, however, was admitted to the RDAP program at FCI Fort Dix, where all treatment was held on the first floor. Therefore, the ADA is not implicated because Petitioner was not denied participation in RDAP due to his confinement in a wheelchair. See Starego v. New Jersey State Interscholastic Athletic Ass'n, 970 F.Supp.2d 303, 309 (D.N.J. 2013) (to succeed on an ADA claim a plaintiff mush show "by reason of his disability, [he] was denied the benefits of, or excluded from participation in, such services, programs, or activities, or was discriminated against by the defendant. . .")

15

(Pet., Ex. D.) In response, he was informed that he could make a transfer request on October 31, 2015. (Id.) There is nothing in the record showing that Petitioner followed the proper procedure to make a transfer request at the appropriate time. Petitioner has not demonstrated that the rejection of his request for a transfer was frivolous or irrational. Therefore, he is not entitled to relief.

III. CONCLUSION

For these reasons, in the accompanying Order filed herewith, the Court will deny the petition because the BOP's decisions to expel Petitioner from the RDAP program and to deny his transfer request were not arbitrary or capricious.

s/Renée Marie Bumb<br>
**RENÉE MARIE BUMB**<br>
**United States District Judge**

Dated: May 2, 2017